## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGIA DIAMANTOPOULOS** <br> **and TED DIAMANTOPOULOS,** | ) <br> ) <br> ) | |
| **Plaintiffs,** | ) <br> ) | |
| **vs.** | ) <br> ) | **Case No. 21 C 3529** |
| **1517660 ONTARIO INC., d/b/a** <br> **Cleanmark Professional Cleaning** <br> **Services, and BETTY VAVITSAS,** | ) <br> ) <br> ) <br> ) | |
| **Defendants.** | ) <br> ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Georgia and Ted Diamantopoulos have sued 1517660 Ontario Inc., d/b/a

Cleanmark Professional Cleaning Services (Cleanmark), and Betty Vavitsas (Vavitsas).

Plaintiffs assert claims against Cleanmark for breach of contract and for an accounting

and against Vavistas for breach of fiduciary duty. The defendants have moved under

Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss for lack of

subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.

The plaintiffs allege as follows in their second amended complaint. The plaintiffs

are domiciled in Illinois; Cleanmark is a Canadian corporation; and Vavitsas is a

Canadian citizen. Cleanmark, which operates as a professional cleaning service, was

founded by Vavitsas's late husband James Vavitsas (James). In July 2012, James

"came to Chicago to promote Cleanmark" and to seek funding. 2d Am. Comp. ¶¶ 9-10.

Plaintiffs allege that they agreed to invest $100,000 in return for a five percent

ownership interest and a share of the profits. The purported agreement, attached to the complaint, is a one-paragraph handwritten document that states:

> I Ted Diamantopoulos enter into an agreement with Jim Vavitsas and Cleanmark Group for 1517660 Ont. Inc. for which T.D. invests $100,000.00 for 05% of Cleanmark profits which equal approx. $1000.00 per month. This amount fluctuates depending on sales. The One Hundred Thousand Investment $100,000.00 will start yielding interest September 1st 2012.

*Id.*, Ex. 1 (cross-outs in original). The agreement purports to be signed by Ted Diamantopoulos and Jim Vavitsas and is dated July 13, 2012. It also bears, above the signature lines, a handwritten notation, "Balance as of 12-1-2012 $150,000." *Id.*

According to plaintiffs, they performed their end of the deal by investing $100,000. Defendants, they say, performed for a period of time, and payments were made "via Edge Clean, which was a sister corporation that was later dissolved by [James] Vavitsas," 2d Am. Compl. ¶ 18, with its assets then transferred to Cleanmark. James died in June 2017, and Betty took over the operation of Cleanmark. Plaintiffs say that after James' death, Betty "came to Illinois to meet with Plaintiff [sic] and members of Plaintiff's family and re-affirmed her commitment to repay Plaintiff and continued to make direct payments to Plaintiff in Illinois within some semblance [sic] with the Agreement." *Id.* ¶ 21. Defendants stopped paying, however, in November 2018 and have refused to pay since. Plaintiffs seek payment of the amount they claim is due as well as an accounting, given their claimed entitlement to a percentage of Cleanmark's profits. On their claim against Vavitsas, plaintiffs claim that given her role as president and sole director of Cleanmark, she owed them (as investors) a duty of trust and loyalty, which they contend she breached.

**1.      Subject matter jurisdiction**

The issue of subject matter jurisdiction has been resolved, at least for present purposes, via the second amended complaint, in which plaintiffs clearly allege that they are both domiciliaries of Illinois, and only Illinois.  Defendants are both claimed to be citizens of Canada, so complete diversity of citizenship appears to exist.

**2.      Personal jurisdiction**

When a defendant moves to dismiss a complaint under Rule 12(b)(2), the plaintiff must establish the existence of jurisdiction.  *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020).  When, as here, a court has not held an evidentiary hearing (defendants did not seek one), the plaintiff only bears "the burden of making a prima facie case for personal jurisdiction."  *Id*. at 393.

When considering a Rule 12(b)(2) motion, the Court may consider affidavits, but "in evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record."  *Id*. (alterations accepted) (internal quotation marks omitted).  Therefore, though the Court must accept as true "any facts in the defendants' affidavits that do not conflict with anything in the record," *id*., "[t]he plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

A federal court in Illinois may exercise personal jurisdiction only if an Illinois state court would have jurisdiction over the defendant.  *See, e.g., Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008).  Illinois law permits its courts to exercise jurisdiction to the extent allowed by both the Illinois and federal

constitutions.  735 Ill. Comp. Stat. 5/2-209(c).  Because the Illinois Constitution is, in this respect, coextensive with the Federal Constitution, jurisdiction is proper if it meets federal due process requirements.  *See, e.g., Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016).

There are two types of personal jurisdiction, general and specific.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In this case plaintiffs argue only for specific jurisdiction, which exists when a "defendant's contacts with the forum" are "directly related to the conduct pertaining to the claims asserted." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).  Specific jurisdiction exists when: (1) "the defendant's contacts with the forum state . . . show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state"; (2) "the plaintiff's alleged injury . . . [arose] out of the defendant's forum-related activities"; and (3) "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice."  *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) (alterations accepted) (internal quotation marks omitted).

"[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue."  *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).  In a breach-of-contract suit, personal jurisdiction typically will turn "on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state."  *Id.* at 674; *see also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).  (Illinois regards fiduciary duty claims as contract-based claims, not tort claims. *See Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445, 539 N.E.2d 1216, 1220 (1989).

4

Plaintiffs allege that they were solicited *in Illinois* to invest in Cleanmark. Specifically, they allege that James Vavitsas, acting on Cleanmark's behalf, came to Illinois and personally solicited them to invest in the company.[1]  This is plainly sufficient to satisfy the purposeful availment requirement with respect to plaintiffs' claims against Cleanmark, which arise directly from these Illinois contacts.  The Court notes that Betty Vavitsas has submitted an affidavit in which she states that "[o]n July 13, 2012, my husband James and Ted Diamantopoulos were on a trip in Las Vegas, Nevada."  Mot. to Dismiss, Ex. D ¶ 10.  Putting aside the relatively obvious hearsay problem with Betty's statement, it does not contradict plaintiffs' allegation that James Vavitsas came to Illinois in July 2012 (not necessarily just on July 13) and solicited Ted Diamantopoulos in this state.  Thus plaintiffs' allegation that they were solicited in Illinois remains uncontradicted for purposes of the present motion.  Finally, defendants do not argue that "traditional notions of fair play and substantial justice," *Lexington Ins. Co.*, 938 F.3d at 878, counsel against allowing this suit to proceed in Illinois.

Turning to plaintiffs' claims against Betty Vavitsas, they allege in the complaint that Betty "came to Illinois to meet with Plaintiff [sic] and members of Plaintiff's family and re-affirmed her commitment to repay Plaintiff and continued to make direct payments to Plaintiff in Illinois within some semblance [sic] with the Agreement."  2d Am. Compl. ¶ 21.  Plaintiffs' claims against Betty arise, at least in part, from this alleged

---

[1] Defendants appear to contend that a provision of the Illinois Dead Man's Act, 735 ILCS 5/8-301, precludes plaintiffs from testifying regarding the contents of any conversation with James Vavitsas.  The Court need not address this issue for present purposes except to note that the statute, by its terms, would not preclude Ted Diamantopoulos from testifying that he met with James in Illinois and that they thereafter executed the claimed contract.

agreement and commitment. Betty's claimed footfall in Illinois to reaffirm the company's contractual obligations—which she does not deny in her affidavit—constitutes a sufficient contact to permit the exercise of personal jurisdiction here.

For these reasons, the Court overrules defendants' contention that personal jurisdiction is lacking.

**3.     Sufficiency of claims as pleaded**

Defendants argue that plaintiffs' claims are barred by the Ontario, Canada statute of limitations, which they contend governs; the contract was terminable at will under Illinois law; and that the accounting and fiduciary claims are otherwise deficient.

**a.     Statute of limitations**

Defendants contend that the Ontario statute of limitations governs, by virtue of Illinois' borrowing statute, which states: "When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 Ill. Comp. Stat. 5/13-210. Overlooked by both sides, however, is the fact that Illinois applies the borrowing statute only when neither the plaintiff nor the defendant was a resident of Illinois at the time the claim arose. *See, e.g., Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 309 Ill. App. 3d 730, 737, 723 N.E.2d 687, 693 (1999) (citing *Miller v. Lockett*, 98 Ill. 2d 478, 481-83, 457 N.E.2d 14, 16-17 (1983). In this case the plaintiffs appear to have been Illinois residents at all relevant times. Thus the borrowing statute does not call for application of Ontario's statute of limitations. As this is the only limitations-based point argued by defendants, they are not entitled to dismissal of the complaint on the ground that plaintiffs' claims are

time-barred.

**b.    Contract terminable at will?**

Defendants argue that the alleged contract has no duration and, under Illinois law, is therefore terminable at will.  This is an absurd argument as a basis for dismissal of plaintiffs' breach of contract claim.  First of all, nothing in the complaint suggests that the defendants ever terminated the contract; indeed, plaintiffs allege that Betty Vavitsas expressly reaffirmed it after her husband's death.  Second, even if the defendants were entitled to terminate the contract at will, that would not extinguish their obligation to pay amounts that were due and owing prior to any termination—which is exactly what plaintiffs allege.  In addition, given the nature of the contract, there is a viable argument that it contained an implied term that it would remain in effect long enough for plaintiffs to recoup their investment.  *See generally Empire Indus. Inc. v. Winslyn Indus., LLC*, 327 F. Supp. 3d 1101, 1110 (N.D. Ill. 2018) (Kennelly, J.).  It would be rather ridiculous to read the contract in a way that would allow defendants to get the benefit of plaintiff's $100,000 investment and then immediately terminate the contract and get out, scot-free, of any obligation to pay plaintiffs anything.

**c.    Accounting claim**

Defendants argue that an accounting claim is not allowed under Illinois law when there is an adequate remedy at law.  The problem here is that it is too early to say if an adequate remedy exists, because (among other things) nothing is known at this point about the condition of defendants' records relating to Cleanmark.  The Court declines to dismiss this claim.

### d. Fiduciary duty claim

Defendants argue that the contract does not reflect that Ted Diamantopoulos had any ownership interest in Cleanmark but rather only that he would receive a percentage of the profits. A contract for the payment of money, defendants argue, does not give rise to any sort of fiduciary duty. That is certainly so, *see, e.g., Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) ("[P]arties to a contract are not each other's fiduciaries"), but plaintiffs allege that they were given an ownership interest. That would not appear to be supported by the contract on its face, but the Court cannot yet rule out the possibility that plaintiffs can establish this point—and a motion to dismiss is a test only of the plaintiff's allegations, not her evidence. The Court declines to dismiss count 3 on this basis.

### Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss [dkt. no. 15]. Defendants are directed to answer the complaint within twenty-one days of the date of this order, that is, by January 4, 2022. Rule 26(a)(1) disclosures are to be made by that same date. The parties are directed to meet and confer regarding a discovery and pretrial schedule and are to file, by January 11, 2022, a joint status report containing a proposal or separate proposals and also addressing the possibility of settlement. The telephonic status hearing set for December 15, 2021 is vacated and reset to January 18, 2022 at 9:00 a.m., using call-in number 888-684-8852, access code 746-1053.

Date:  December 14, 2021

_____
MATTHEW F. KENNELLY
United States District Judge

8